NOT DESIGNATED FOR PUBLICATION

No. 127,561

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID A. YARBROUGH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; COURTNEY MIKESIC, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Kayla L. Roehler*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: David A. Yarbrough appeals from the district court's summary denial of his pro se "Petition of Actual Innocence," which the district court liberally construed as his second K.S.A. 60-1507 motion. The district court summarily denied his motion, finding it both untimely and successive.

On our review, we find Yarbrough's K.S.A. 60-1507 motion is successive. This is the third time he has raised ineffective assistance of counsel claims before this court. He attempts to relitigate the claims raised in his motion for new trial and subsequently

1

addressed on direct appeal. Further, he attempts to repackage a prosecutorial misconduct claim he raised on direct appeal. Yarbrough relies upon a claim of new evidence to overcome the bar to a successive motion; specifically, three purported medical articles. However, these articles do not meet the threshold for a gateway claim based on newly discovered evidence. Yarbrough also fails to identify any witnesses who could testify about the articles or what their expected testimony would be.

Lastly, Yarbrough raises a due process violation claim that is wholly conclusory. Ultimately, the district court reached the correct result even though we disagree with its finding on timeliness.

FACTUAL AND PROCEDURAL BACKGROUND

The history of this case is extensive. The full factual and procedural background underlying Yarbrough's convictions was set forth in his direct appeal and need not be repeated here. See *State v. Yarbrough*, No. 108,096, 2013 WL 3791793, at *1 (Kan. App. 2013) (unpublished opinion) (*Yarbrough I*). Additional background was set forth in Yarbrough's appeal from the denial of his first K.S.A. 60-1507 motion. See *Yarbrough v. State*, No. 122,077, 2020 WL 5740891, at *1 (Kan. App. 2020) (unpublished opinion) (*Yarbrough II*).

Relevant to this appeal, Yarbrough was convicted in 2011 of various child sex crimes against A.G. After the jury returned its verdict, Yarbrough raised a variety of claims in two motions for a new trial. After the first motion was denied, Yarbrough asserted his trial counsel, W. Fredrick Zimmerman, was ineffective, and new counsel, James Spies, was appointed. Yarbrough then filed a second motion for new trial, arguing Zimmerman:

"was ineffective for failing to investigate A.G.'s personal, social, and mental health background, for failing to call the medical professional who examined A.G. to testify that she showed no signs of sexual abuse, and for failing to examine the basis of the medical professional's statistic in the medical report that '"90-95% of children who have been sexually abused have normal examinations."'" *Yarbrough I*, 2013 WL 3791793, at *4.

In our present K.S.A. 60-1507 motion, Yarbrough largely repeats the claims in his second motion for new trial that Zimmerman failed to properly challenge the medical/forensic evidence underlying A.G.'s allegations. Specifically, A.G. alleged various acts of rape and sodomy over a period of roughly a year and a half in which she claimed Yarbrough put his fingers and/or penis in her vagina and/or anus. A medical exam following A.G.'s disclosure of abuse reflected no apparent injuries to those areas. However, this exam occurred six months after the last alleged incident of abuse, and the medical examiner's report indicated it was not uncommon for child sex abuse victims to have normal exams. Ultimately, the medical examiner was not called to testify at trial.

The district court held an evidentiary hearing on Yarbrough's second motion for new trial. Zimmerman explained he did not call the medical examiner to testify at trial because he believed the value of any testimony that A.G.'s exam showed no signs of abuse would be outweighed by the likelihood the examiner would testify that such results are common even when abuse has occurred. Zimmerman further explained "he did not independently examine the basis for the statistic that '"90-95% of children who have been sexually abused have normal examinations"' because he believed it was simply another way of saying that it is not uncommon for victims of sexual assault to show no signs of physical trauma." 2013 WL 3791793, at *5.

Yarbrough called Dionne Scherff to testify as an expert defense counsel. Scherff testified she believed it was objectively unreasonable not to present evidence that A.G.'s exams were normal, and the evidence should have been presented to the jury despite the risk of the examiner testifying such results do not mean abuse has not occurred. "But

3

Scherff could not say that the outcome of the trial would have been different if A.G.'s medical exam results had been presented to the jury." 2013 WL 3791793, at *5.

The district court denied Yarbrough's motion, finding Zimmerman was not ineffective for failing to present evidence of A.G.'s medical exam because the exam did not take place until six months after the last incident of abuse. The district court further found, even if the evidence had been presented to the jury, it would not have changed the verdict. Yarbrough was sentenced to a controlling term of lifetime imprisonment with a mandatory minimum of 50 years. His convictions and sentences were affirmed on direct appeal by another panel of this court. 2013 WL 3791793, at *1.

Pertinent here, the panel affirmed the district court's denial of Yarbrough's motion for new trial. The panel held it was not deficient performance on Zimmerman's part to decline to call the medical examiner to testify or seek evidence to undermine the statement in the examiner's report that 90-95% of child victims of sexual abuse have normal examinations. 2013 WL 3791793, at *13-14.

Yarbrough subsequently filed his first K.S.A. 60-1507 motion, asserting Zimmerman was ineffective for failing to investigate or argue that Yarbrough was incompetent based on Yarbrough's low IQ. That motion was denied, and the district court's decision was affirmed by another panel of this court. See *Yarbrough II*, 2020 WL 5740891, at *8. That decision became final when the mandate was issued on August 18, 2021.

On June 26, 2023, Yarbrough mailed his pro se "Petition of Actual Innocence" to the district court, which was filed on July 13, 2023. Yarbrough's petition alleged:

- Zimmerman was ineffective for failing to present medical evidence showing a lack of injuries to A.G. Zimmerman was also ineffective for

4

failing to conduct additional research in scientific/medical literature regarding sexual abuse examinations and forensic testing for male DNA in abuse victims. Yarbrough further asserted Zimmerman was ineffective for failing to request additional medical/forensic examination—although it is unclear whether he believes it should have been an examination of himself, A.G., or both;

- The State engaged in prosecutorial misconduct because the medical evidence that was known—or reasonably could have been known—demonstrated he was actually innocent; thus, there was no probable cause to charge him; and

- His due process rights were violated at trial based on a combination of ineffective assistance of trial counsel, prosecutorial misconduct, and/or a general lack of evidence that he committed any crimes.

In support of his petition, Yarbrough attached three exhibits, which are purportedly published medical articles:

- A table of indications of physical trauma in sexual abuse cases, which seems to be an excerpt from a published article entitled "Evaluating the Child for Sexual Abuse," by the American Academy of Family Physicians;

- "Detecting the Presence of Male DNA in Cases of Sexual Assault without Ejaculation," from an unclear author/source; and

- "Understanding the Sexual Abuse Exam," by Ed Friedlander, M.D.

The district court summarily denied Yarbrough's petition, which it liberally construed as a K.S.A. 60-1507 motion. The district court noted the extensive history of the prior proceedings as detailed by previous panels of this court. The district court found the motion was untimely because it was filed more than one year after the decision affirming the denial of his first K.S.A. 60-1507 motion became final. It held Yarbrough

5

had not argued or established manifest injustice to excuse his late filing. The district court further concluded Yarbrough had not provided any new evidence to support either a substantive or procedural claim of actual innocence to allow consideration of an untimely or successive motion. Nevertheless, the district court addressed the merits of Yarbrough's arguments and found them unpersuasive.

As to his ineffective assistance of counsel claim(s), the district court noted Yarbrough raised the same claim(s) against Zimmerman as previously litigated in his motion for new trial and addressed on direct appeal. Specifically, the district court stated Yarbrough was attempting "to breathe new life into his third ineffective assistance of counsel claim by asserting actual innocence[;] however, he has failed to meet his burden for actual innocence." The district court held Yarbrough failed to establish deficient performance by Zimmerman, much less demonstrate prejudice.

The district court was generally unpersuaded by Yarbrough's prosecutorial misconduct claim, and found it was barred as it had been previously raised on direct appeal and in Yarbrough's first K.S.A. 60-1507 motion. The district court found it was also a conclusory allegation. Similarly, the district court found Yarbrough's general due process challenge unpersuasive, stating it was "a mere conclusory allegation with no factual instances of justice being denied or what rule was violated."

Lastly, the district court found Yarbrough's motion was barred by res judicata. In short, it found the claims raised in Yarbrough's motion had been—or could have been—raised in prior proceedings, and the basis for his current claims was known to him at the time of those proceedings.

Yarbrough filed a premature notice of appeal, challenging any and all adverse rulings on his petition. The State does not contest Yarbrough's premature notice of appeal

as a timely appeal of the district court's subsequent journal entry and order. Additional facts are set forth as necessary.

ANALYSIS

*Standard of Review and Applicable Legal Principles*

When, as occurred here, "'the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief.' [Citation omitted.]" *State v. Roberts*, 310 Kan. 5, 12, 444 P.3d 982 (2019).

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2022 Supp. 60-1507(b) (grounds for relief); see Supreme Court Rule 183(g) (2026 Kan. S. Ct. R. at 242) (preponderance burden).

A movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. See *Thuko v. State*, 310 Kan. 74, 80-81, 444 P.3d 927 (2019). Under Supreme Court Rule 183(d) (2026 Kan. S. Ct. R. at 241-42):

> "A sentencing court may not consider a second or successive motion for relief by the same movant when:

7

"(1) the ground for relief was determined adversely to the movant on a prior motion;

"(2) the prior determination was on the merits; and

"(3) justice would not be served by reaching the merits of the subsequent motion."

To avoid dismissal of a second or successive motion under K.S.A. 60-1507, the movant must show exceptional circumstances, otherwise the motion must be dismissed as an abuse of remedy. See *Littlejohn v. State*, 310 Kan. 439, 445-46, 447 P.3d 375 (2019). "'Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant [from] raising the issue in a preceding [K.S.A.] 60-1507 motion.' [Citation omitted.]" *Beauclair v. State*, 308 Kan. 284, 304, 419 P.3d 1180 (2018). "[A] colorable claim of actual innocence . . . qualifies as 'an unusual event . . . that prevented the defendant [from] raising the issue' previously." 308 Kan. at 304.

*Discussion*

I. *The motion was not untimely.*

As a preliminary matter, Yarbrough argues the district court erred in finding his motion untimely. The State does not contest this point. Yarbrough asserts the district court misconstrued the 2022 amendments to K.S.A. 60-1507(f) regarding the time limit to seek relief. Specifically, he points to K.S.A. 2022 Supp. 60-1507(g), which provides: "The amendments made to subsection (f) by this act shall not bar actions under this section that are brought within one year of the effective date of this act." Those amendments became effective on July 1, 2022. See L. 2022, ch. 47, § 4.

Yarbrough mailed his motion for filing with the district court on June 26, 2023. There is no dispute Yarbrough was (and still is) a prisoner in the custody of the Kansas Department of Corrections. "[A] prisoner's pro se documents [are deemed] 'filed' when he

8

or she submits them to prison authorities for mailing." *Wahl v. State*, 301 Kan. 610, 615, 344 P.3d 385 (2015). Yarbrough's motion was properly filed before July 1, 2023—within one year of the effective date of K.S.A. 2022 Supp. 60-1507.

## II. *Yarbrough's motion was successive.*

Yarbrough further argues the district court erred in finding his motion was barred as a successive motion under K.S.A. 60-1507(c) and Supreme Court Rule 183(d). Yarbrough is correct that the district court mistakenly concluded he failed to cite any new evidence in support of his motion. In fact, the district court never acknowledged the exhibits attached to Yarbrough's motion. Still, the district court's ultimate conclusion is sound.

While Yarbrough did attach exhibits to his petition, he failed to set forth any witnesses who would testify about the exhibits or what their expected testimony would be. He passingly mentions the contents of the exhibits; particularly, the article by Dr. Friedlander. However, he provides no evidence that the exhibits reflect a generally accepted belief in the relevant medical or scientific community. His first exhibit is simply a table of potential findings that would be considered normal, and others that would indicate sexual abuse. This provides no frame of reference for whether such findings would be the same in cases where the exam took place immediately after the alleged abuse, as compared to an exam several months after.

Yarbrough's second exhibit concerning the detection of male DNA in sexual assault cases does little to advance his claims. At best, it reflects that male DNA from non-sperm cells may be present in or on the victim for up to three weeks after the sexual contact. But this is of questionable relevance here. The trial evidence reflected the last instance of sexual abuse occurred six months prior to A.G.'s disclosure and subsequent examination, although Yarbrough disputes this, citing potentially conflicting evidence.

9

Still, the exhibit itself is questionable in that it is from an unknown source without a named author. As best can be discerned, it seems to be an article from what may be an expert witness referral service, but Yarbrough failed to explain this in his motion and offers no explanation is his brief either.

Ultimately, Yarbrough's argument is unavailing as his motion did not cite to any evidence regarding whether his DNA was detected in the course of A.G.'s exam(s). He only referred to the medical examiner's findings that A.G. had no apparent injuries. He also did not dispute the alleged timeline of abuse. He simply argued there would be evidence of physical injuries months after the abuse occurred. But this goes to the contents of his third exhibit, which is of similarly questionable value.

Yarbrough's third exhibit, at best, suggests some uncertainty about the medical examiner's conclusions, but it is far from definitive. In fact, the author, Dr. Friedlander, explicitly states: "The authors warn that this classification 'does not represent a consensus of medical experts regarding the classification of findings with respect to abuse.'" The bulk of the article consists of brief references to other articles concerning sexual abuse examinations, the majority of which Dr. Friedlander seems to disagree with. If anything, this exhibit reflects considerable medical disagreement on what past or present injuries might be observed in examining a sexual assault victim.

Yarbrough acknowledges he is not raising a substantive claim of actual innocence; rather, he is relying on new evidence as a procedural gateway to overcome the bar to successive K.S.A. 60-1507 motions. The standard for such gateway claims was explained in *Beauclair*, 308 Kan. at 301, to mirror the federal habeas standard addressed in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) ("'[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'").

10

As the *Beauclair* court further explained, this standard requires a *credible* claim of innocence. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (Emphasis added.) 308 Kan. at 299 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). To establish that a constitutional violation probably resulted in the conviction of someone who is actually innocent, the defendant "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Schlup*, 513 U.S. at 327.

Here, Yarbrough failed to comply with a well-established rule in K.S.A. 60-1507 proceedings. He needed to file a motion that "alleges facts which do not appear in the original record but which, if true, would entitle the movant to relief, *and the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence*." (Emphasis added.) *Swenson v. State*, 284 Kan. 931, 939, 169 P.3d 298 (2007). Ultimately, his claims turn on an assertion that he did not commit the crimes he was convicted of based on the medical evidence. But the exhibits he attached to his motion are not self-probative. It is also not entirely clear who the particular authors are for his first and second exhibits. His third exhibit shows obvious medical disagreement as to the expected physical evidence indicative of sexual abuse. It is not clear that anyone who produced, reviewed, or is otherwise familiar with the information in Yarbrough's exhibits would testify, or what their expected testimony would establish. And, most importantly, there is no indication that any witness could testify that the information in the exhibits is a valid reflection of generally accepted medical beliefs.

Although the district court never expressly addressed Yarbrough's exhibits, it was ultimately correct in concluding Yarbrough was attempting "to breathe new life into his third ineffective assistance of counsel claim by asserting actual innocence[;] however, he

11

has failed to meet his burden for actual innocence." Yarbrough did not make a proper showing that his claim of actual innocence was credible because he failed "'to support his allegations of constitutional error with new *reliable* evidence.'" (Emphasis added.) *Beauclair*, 308 Kan. at 299. Accordingly, Yarbrough could not meet his burden to show a proper claim of ineffective assistance of counsel. Since he cannot establish deficient performance by trial counsel, he cannot demonstrate prejudice. And to properly assert a gateway claim of actual innocence, he "is required to make a stronger showing than that needed to establish prejudice." *Schlup*, 513 U.S. at 327.

In addition to failing to present a viable claim of actual innocence, Yarbrough attempts to recharacterize his prior claims in his motion. On appeal, Yarbrough argues his complaints about ineffective assistance of counsel go to the performance of Spies in litigating the claims against Zimmerman in his second motion for new trial. However, before the district court, Yarbrough very clearly asserted his "claim of 'actual or Legal Innocence' [stems] from Ineffective Assistance of trial counsel; the attorney of record, defense attorney Mr. Zimmerman." At no point did he mention or even allude to any claim against Spies. Rather, he repeatedly referred to his trial counsel. In fact, he specifically took issue with the panel's analysis of his claim on direct appeal, which solely addressed Zimmerman's performance. The claim is clearly barred as it was already decided on direct appeal. See *Woods v. State*, 52 Kan. App. 2d 958, 964, 379 P.3d 1134 (2016) (res judicata bars consideration of issue raised in K.S.A. 60-1507 motion that was previously ruled on in direct appeal).

It is a well-established rule that a point not raised before the district court generally will not be considered for the first time on appeal. See *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). To consider such a claim, the appellant must argue and demonstrate a recognized exception to this rule. Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992,

995, 441 P.3d 1036 (2019). Here, Yarbrough fails to explain why this point was not raised below and why it should be considered on appeal. Accordingly, he has waived or abandoned any arguments related to Spies' performance. See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022).

Because Yarbrough fails to present a claim of actual innocence to justify his second K.S.A. 60-1507 motion, and the claims he presents are those previously determined against him, the district court correctly determined that Yarbrough's current motion is successive.

### III. *Prosecutorial misconduct and due process violation*

As to his claim of prosecutorial misconduct and his blanket claim of a due process violation, Yarbrough asserts they were not raised in prior proceedings and should have been considered in light of newly discovered evidence. His argument is problematic for the reasons previously discussed herein—namely, Yarbrough did not set forth a *proper* evidentiary basis for a gateway claim of actual innocence.

Supreme Court Rule 183(c)(3) (2026 Kan. S. Ct. R. at 241) provides:

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

See *State v. Neal*, 292 Kan. 625, 630, 258 P.3d 365 (2011) (acknowledging general rule that defendant must raise all available issues on direct appeal).

Consistent with this rule, a K.S.A. 60-1507 motion cannot be used to relitigate claims already resolved on direct appeal. See *Woods*, 52 Kan. App. 2d at 964-65. Yarbrough complained of prosecutorial misconduct on direct appeal and further complained the medical evidence from A.G.'s exam would have demonstrated his innocence, albeit in the context of his ineffective assistance of counsel claim. He provides no explanation why the present claim could not have been raised on direct appeal.

Ultimately, it does not matter whether Yarbrough's prosecutorial misconduct claim should be characterized as barred by res judicata or collateral estoppel. See *In re Care & Treatment of Sigler*, 310 Kan. 688, 697-98, 448 P.3d 368 (2019) (issue *and* claim preclusion bar relitigation of prior adjudications); *Woods*, 52 Kan. App. 2d at 964. His claim is wholly conclusory and was properly rejected on that basis alone.

Yarbrough's blanket due process claim is effectively a combination of his ineffective assistance of counsel and prosecutorial misconduct claims—and it too is wholly conclusory. Again, this claim was properly rejected on its face, irrespective of any additional procedural bars.

We hold the district court was well within its statutory authority to summarily dismiss these claims on the face of the motion. See *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). And this court can affirm the district court as correct for any reason. *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). Thus, irrespective of any preclusionary doctrines, the district court did not err in dismissing Yarbrough's prosecutorial misconduct and due process claims.

Although we disagree with the district court's finding of untimeliness, we find Yarbrough's second K.S.A. 60-1507 motion was largely successive and attempted to relitigate claims already resolved on direct appeal. Accordingly, the district court did not err in summarily dismissing Yarbrough's K.S.A. 60-1507 motion in its entirety.

Affirmed.